UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA MONTGOMERY,<br><br>    Plaintiff,<br><br>    v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY<br><br>    Defendant. | Civil Case No. 23-463 (RJL) |

**MEMORANDUM OPINION**

March 6th, 2025 [Dkt. #20]

In this negligence action, plaintiff Rebecca Montgomery ("plaintiff" or "Montgomery") sued the Washington Metropolitan Area Transit Authority ("WMATA" or "defendant"), alleging that she was injured due to the negligent operation of a WMATA metrorail train. *See* Compl. [Dkt. #1-2]. Pending before the Court is WMATA's motion for summary judgment. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. #20]. Because plaintiff has failed to identify any expert testimony regarding the applicable standard of care, I will **GRANT** WMATA's motion for summary judgment.

**I.   BACKGROUND**

The facts, as alleged by plaintiff, are as follows. On November 27, 2019, plaintiff and her two adult daughters were riding on a WMATA metrorail train. Compl. ¶ 5. A bulkhead door near their seats was swinging open and hitting plaintiff, so when the train stopped at the Farragut North station she stood up to move seats. *Id.* ¶ 6. While plaintiff was standing, the train abruptly and without warning moved forward and stopped again,

1

<small>

causing plaintiff to fall and fracture her hip. *Id.* ¶¶ 7–8. As a result of her injuries, she has suffered significant pain and incurred substantial medical expenses. *Id.* ¶ 9.

Plaintiff filed a negligence suit against WMATA in D.C. Superior Court. *See* Notice of Removal [Dkt. #1]. WMATA removed the case to this Court. *Id.* The parties completed discovery in June 2024, after which WMATA filed the instant motion for summary judgment. *See* Joint Status Report [Dkt. #19] ¶ 1 (stating that the parties had completed discovery as of June 27, 2024); Def.'s Mot. Plaintiff opposes the motion. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") [Dkt. #21]. The motion is now ripe for review.

## II. LEGAL STANDARD

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can satisfy his initial burden of demonstrating that there is no genuine dispute of material fact by "citing to particular parts of materials in the record" or by showing "that [the non-movant] cannot produce admissible evidence to support" the "presence of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1).

If the parties have had adequate time for discovery, summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In

2

such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23 (quoting Fed. R. Civ. P. 56); *see also Kaempe v. Myers*, 367 F.3d 958, 966 (D.C. Cir. 2004) ("To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to each element essential to that party's claim." (citing *Celotex Corp.*, 477 U.S. at 322)).

B.   Negligence and the Expert Testimony Requirement

To prevail on a negligence claim under D.C. law, a plaintiff "must establish three elements: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's harm." *Whiteru v. WMATA*, 25 F.4th 1053, 1057 (D.C. Cir. 2022).

Failure to sufficiently prove the standard of care is "fatal to a negligence claim." *See Briggs v. WMATA*, 481 F.3d 839, 841 (D.C. Cir. 2007) (quoting *Scott v. District of Columbia*, 101 F.3d 748, 757 (D.C. Cir. 1996)). Expert testimony is required on the standard of care "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)). Expert testimony is *not* required though, if the alleged negligent conduct is "within the realm of common knowledge and everyday experience" of jurors. *Id.* (quoting *Arnold & Porter*, 756 A.2d at 433).

3

## III. ANALYSIS

The Complaint asserts one count of negligence against WMATA. *See* Compl. ¶¶ 10–14. Plaintiff claims that WMATA had "a duty [to] operate the metrorail train in a safe and reasonable manner, to avoid injuries to passengers, and a duty to otherwise act reasonably under the circumstances." Compl. ¶ 11. According to plaintiff, WMATA breached those duties by:

> a. operating the metrorail train in an unsafe and reckless manner;
> b. failing to pay full-time attention to its passengers;
> c. failing to follow all safety protocols and guidelines then in full force and effect;
> d. failing to operate the metrorail train in a reasonable, careful, and prudent manner; and
> e. failing to otherwise use that degree of caution and attention which a person of ordinary skill and judgment would use under similar circumstances.

*Id.* ¶ 12. Plaintiff asserts that "[a]s a direct and proximate result of" those breaches, she "has suffered bodily injury, and is permanently and severely injured." *Id.* ¶ 13.

In its motion for summary judgment, WMATA argues that because plaintiff has failed to identify any experts in this case, she cannot establish the national standard of care[1] required for a *prima facie* case of negligence. *See* Def.'s Mot. 2–3.[2] Plaintiff concedes that she has not proffered expert testimony on this issue. *See* Def.'s Statement

---

[1] The applicable standard of care here is the national standard of care. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 569 (D.C. Cir. 2018) ("Under D.C. law, a tort-law plaintiff in a negligence case must show that the defendant violated a national standard of care."); *see also Robinson v. WMATA*, 774 F.3d 33, 36 (D.C. Cir. 2014) (applying a national standard of care); *Briggs*, 481 F.3d at 846–47 (same); *Thomas v. WMATA*, 2024 U.S. Dist. LEXIS 160149, at *11 (D.D.C. Sept. 6, 2024) (same).

[2] WMATA also argues that (1) the undisputed facts establish that there was no negligence by the train operator; and (2) plaintiff contributed to her injuries by moving about the train without holding onto anything, despite her age and medical history. *See* Def.'s Mot. 2–3. Because I find that plaintiff's failure to identify any expert testimony on the standard of care mandates summary judgment for WMATA, I need not reach these other arguments.

of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ("Def.'s SUMF") [Dkt. #20-1] ¶ 8 ("Plaintiff has not identified any expert witnesses."); Pl.'s Statement of Disputed Material Facts [Dkt. #21-1] ¶ 8 (admitting that paragraph 8 of Def.'s SUMF is "[u]ndisputed").

Instead, plaintiff counters that expert testimony is not required here because (1) the facts of the case are within the average juror's common knowledge and everyday experience; and (2) WMATA's internal policies can provide the relevant standard of care. *See generally* Pl.'s Opp'n. Addressing each contention in turn, I find that neither is availing. I will thus grant summary judgment for WMATA.

A.   <u>Expert Testimony Was Required to Establish the National Standard of Care</u>

Plaintiff claims that the conduct at issue here "is within the realm of common knowledge and everyday experience," so expert testimony is not required to establish the standard of care. *Id.* at 6. According to plaintiff:

> The factual context in this case is sufficient to enable a jury, based on its own knowledge and experience, to assess the relative dangerousness of the train movement which caused [plaintiff] to fall. First, the train had come to a full stop at the Farragut North metro station prior to the 'jerking' motion that caused [plaintiff's] fall. . . . Second, only after pulling into the station and coming to a full stop, did the train suddenly start and then immediately stop again, creating a 'jerking' motion. . . . Third, the train operator made no announcement stating that the train will briefly begin moving again, which would have been sufficient warning to the potential danger posed to its passengers.

*Id.* at 7. WMATA vehemently disagrees, asserting that "expert testimony is required as to the operation of the train." Def.'s Mot. 8.

As an initial matter, it is clear that certain aspects of operating a metrorail train are not within a layperson's knowledge. The average juror does not know how to start, drive, or stop a train. *See Frick v. Amtrak*, 54 F. Supp. 3d 1, 4 (D.D.C. 2014) (requiring expert testimony regarding whether a train's speed was "excessive" because "the standards governing the operation of [train operators] are distinctly related to an occupation that is 'beyond the ken of the average layperson'" (alterations in original) (quoting *Robinson v. WMATA*, 941 F. Supp. 3d 61, 67 (D.D.C. 2013))); *Hinson v. Maryland Transit Admin.*, 2017 U.S. Dist. LEXIS 201606, at *8 (D. Md. Dec. 6, 2017) ("The average juror does not know how to start a train, how to drive a train, or how to stop a train. Likewise, the average juror would not know what causes a train to jerk and what could be done to prevent a sudden movement of the train."). As such, plaintiff must provide expert testimony on the national standard of care for driving a metrorail train.

Evidently anticipating this conclusion, plaintiff instead focuses her arguments not on the movement of the train itself but on the train operator's failure to warn passengers of the train's movement. *See* Pl.'s Opp'n 13. Specifically, she asserts that "WMATA's negligence consists of [not] providing adequate warning before putting adjusting [sic] the train on the platform. This is not too convoluted or recondite for a lay jury to understand." *Id.* Unfortunately for plaintiff, she still needed to provide expert testimony to establish the national standard of care here.

"The D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Briggs*, 481 F.3d at 845. Indeed, at first blush the issue of whether the train operator should have

6

warned passengers of train movement could appear to be a matter of common sense. Yet it is important to consider the context here. This is a safety issue intertwined with the complicated job of running a metrorail train. Jurors do not routinely operate metrorail trains, let along grapple with safety issues involved in operating those trains. The need for expert testimony is particularly acute in cases involving safety standards. *See Robinson v. WMATA*, 774 F.3d 33, 39 (D.C. Cir. 2014) ("Especially in cases involving safety standards, the expert must also show that the particular practice at issue reflects a national standard of care." (emphasis omitted)); *Briggs*, 481 F.3d at 845–46 ("[E]xpert testimony is routinely required 'in negligence cases . . . which involve issues of safety, security and crime prevention.'" (quoting *Varner v. District of Columbia*, 891 A.2d 2560, 267 (D.C. 2006))).

Additionally, our Circuit has made clear that the limited "'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required." *See Briggs*, 481 F.3d at 845 (collecting cases). Jurors with presumably varying levels of experience even *riding* D.C. metrorail trains could certainly disagree over the national standard of care involved in announcements made while *operating* metrorail trains. Thus plaintiff should have proffered expert testimony here to survive summary judgment.

Plaintiff's citation to the D.C. Circuit's dicta in *Robinson v. WMATA* is noteworthy, but ultimately does not change the outcome here. In *Robinson*, the plaintiff sued WMATA for negligence, alleging that a WMATA bus driver started the bus without

checking to see if passengers were secure; as a result, plaintiff fell and suffered injuries. 941 F. Supp. 2d at 65–66. The district court granted summary judgment in WMATA's favor, finding that the plaintiff had failed to present sufficient expert testimony about the standards governing operation of city buses, which are "beyond the ken of the average layperson." *Id.* at 67 (quoting *Briggs*, 481 F.3d at 845). On appeal, the D.C. Circuit expressed some apprehension toward this conclusion: "[W]e seriously doubt that determining whether it is reasonable to start a motor vehicle without checking to make sure one's passengers are secure is outside 'the realm of common knowledge and every experience' of average jurors." *Robinson*, 774 F.3d at 39 (quoting *Godfrey*, 559 F.3d at 572).

Plaintiff urges the Court to follow the D.C. Circuit's thinking here, but the panel's commentary is not controlling and does not advance plaintiff's cause. First, the D.C. Circuit was not squarely addressing the issue because the plaintiff had forfeited the argument. *Id.* at 40.[3] Second, and perhaps more importantly, the facts in *Robinson* are distinguishable. The D.C. Circuit was considering circumstances more reasonably within the average juror's knowledge: whether a bus driver should have checked his rearview mirror before starting the bus. A juror is likely to have driven a car before and is likely familiar with the importance of checking one's rearview mirror. The average juror is *not* likely to have experience with operating a train and making announcements regarding the movement of that train. Jurors may have experience as train passengers, but their

---

[3] Moreover, even though the D.C. Circuit was not ruling on the issue, it nevertheless stated that the district court's requirement of expert testimony was not plain error "because District of Columbia courts have required expert testimony in many cases that, 'on first blush, appear to be within the realm of common knowledge.'" *Robinson*, 774 F.3d at 40 (quoting *Briggs*, 481 F.3d at 845).

8

understanding of what is expected from a train operator would be speculation.[4]  *See Tripmacher v. Starwood Hotels & Resorts*, 277 F. Supp. 3d 104, 109–10 (D.D.C. 2017) (requiring expert testimony on the standard of care where, "[w]ithout expert testimony, . . . the jury would be left with nothing but 'sheer speculation'").

In sum, I find that the national standard of care here is not within the "the ken of the average layperson" and, as such, expert testimony was required. *See Godfrey*, 559 F.3d at 572.

B.   WMATA's Internal Policies Cannot Provide the National Standard of Care

Plaintiff also argues that WMATA's standard operating procedures ("SOPs") provide evidence of the national standard of care. *See* Pl.'s Opp'n 13–14; Pl.'s Opp'n Ex. 10 ("WMATA SOPs") [Dkt. #21-3] 83. The SOPs state that train operators shall announce the following when repositioning the train: "Attention customers, this train will move forward; please hold on." Pl.'s Opp'n 14; WMATA SOPs 83. According to plaintiff, these SOPs establish that the train operator should have warned plaintiff and

---

[4] For this reason, plaintiff's citation to *WMATA v. O'Neill* is also unpersuasive. *See* Pl.'s Opp'n 11; *WMATA v. O'Neill*, 633 A.2d 834 (D.C. 1993). In *O'Neill*, a WMATA metrobus passenger sued WMATA for negligence after the bus driver failed to eject inebriated passengers who then assaulted the plaintiff. *Id.* at 835–36. The D.C. Court of Appeals found that expert testimony was not required on the standard of care because "it is not beyond the ken of an average juror . . . to decide whether the driver followed ordinary care in the circumstances in responding to disruptive conduct." *Id.* at 841. *O'Neill* is distinguishable, though, because it involved obviously dangerous conduct—passengers actively threatening and assaulting other passengers. *See Wise v. United States*, 145 F. Supp. 3d 53, 61 (D.D.C. 2015) ("When negligence cases implicate safety issues but the D.C. Court of Appeals holds expert testimony unnecessary, the cases tend to arise from facts showing an obvious hazard."). Moreover, *O'Neill* predates the more modern approach to the expert testimony requirement, which requires expert testimony even in cases "that, on first blush, appear to be within the realm of common knowledge." *See Briggs*, 481 F.3d at 845; *see also Godfrey*, 559 F.3d at 572 ("Recently, . . . the D.C. Court of Appeals has required expert testimony in a wider variety of cases, even in those that might initially seem to fall within jurors' common knowledge." (internal citation omitted)). I will not buck this modern trend, which has the benefit of avoiding jury speculation and preventing inconsistent definitions of the national standard of care.

other passengers that the train was about to move again. Pl.'s Opp'n 13–14. Plaintiff further asserts that because these SOPs "are not technical, complicated or difficult to understand, no expert testimony is required in applying them to the facts of this case." *Id.* at 14.

These SOPs are not sufficient to overcome the lack of expert testimony. Our Circuit has consistently found that, under D.C. law, internal SOPs and manuals cannot on their own establish the national standard of care. *See Casey v. McDonald's Corporation*, 880 F.3d 564, 569 (D.C. Cir. 2018) ("[A]pplying D.C. law, we have stated that internal manuals may not, 'on their own, establish the national standard [of care].'" (quoting *Robinson*, 774 F.3d at 39)); *Robinson*, 774 F.3d at 39 ("[A]lthough internal agency manuals such as WMATA's standard operating procedures may provide evidence bearing on the standard of care, they do not, on their own, establish the national standard."); *Briggs*, 481 F.3d at 848 ("The D.C. Court of Appeals has held that such internal policies-standing alone-cannot demonstrate the applicable standard of care."); *see also Robinson*, 941 F. Supp. 2d at 68 ("While a plaintiff's expert may point to rules or guidelines set forth in a defendant's own guidebook or its standard operating procedures as evidence of the standard of care, the expert must adequately demonstrate that those rules or guidelines reflect or embody a national standard of care.").

WMATA's internal SOPs may or may not reflect the national standard of care; it is not enough for plaintiff, however, to proclaim that they do. ""Rather, [an] expert must show that the practices to which the agency has committed reflect 'the national standard of care and not a higher, more demanding one.'" *Robinson*, 774 F.3d at 39 (quoting

10

*Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997)) (internal citations omitted). Furthermore, permitting these SOPs to stand in for the standard of care would create a "perverse incentive" for WMATA to write its SOPs in a way that minimizes civil liability instead of maximizing safety. *See Briggs*, 481 F.3d at 848 (quoting *Arnold & Porter*, 756 A.2d at 435). These SOPs therefore should not and cannot substitute for the required expert testimony on the standard of care.

### IV. CONCLUSION

Because plaintiff has failed to come forward with expert testimony regarding the national standard of care for her negligence claim, I will **GRANT** WMATA's motion for summary judgment. An Order consistent with the above accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge